UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

*D/F*

-----------------------------------------------------------------------X

CARLOS ROJAS,

                    Plaintiff,

      -against-

PORT AUTHORITY OF NEW YORK AND NEW
JERSEY,

                    Defendant.

**MEMORANDUM & ORDER**

**15-CV-6185 (NGG) (PK)**

-----------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Carlos Rojas, who is represented by counsel, brings this action against

Defendant Port Authority of New York and New Jersey seeking damages for allegedly

discriminatory employment practices. (See Am. Compl. (Dkt. 7).) Before the court is

Defendant's Motion to Dismiss the Amended Complaint. (Mot. to Dismiss (Dkt. 10).) For the

reasons stated below, the Motion is GRANTED.

**I.**     **BACKGROUND**

    **A. Plaintiff's Allegations**

      The following facts are taken from the Amended Complaint. "[P]laintiff is a Hispanic

male, who was born in Ecuador, and who is a naturalized citizen of the United States." (Am.

Compl. ¶ 9.) Plaintiff has been "continuously employed" by Defendant "as a Police Officer

since February 5, 2001." (Id. ¶ 7.) "During [P]laintiff's career, [P]laintiff has filed for various

assignments and promotions, including seeking promotion to the positions of Police Sergeant,

Canine (K-9) Officer, and Detective," but Plaintiff has "continuously throughout his career been

denied said promotions and assignments, although [P]laintiff's qualifications and record [are]

equal to and in many if not most instances better than those who have been appointed." (Id.

1

¶¶ 10-11.) "Plaintiff alleges that a primary consideration in promotions and assignments made by [Defendant] is race," and that, in particular, Defendant "discriminate[s] against those who are Hispanic and/or born in another country." (Id. ¶ 12.)

The Amended Complaint notes several instances where Plaintiff did not receive a promotion that was awarded to one or more other officers. Plaintiff applied to be a K-9 Officer in January 2008, but the position was ultimately given to a "non minority officer, junior and less qualified than [P]laintiff." (Id. ¶ 38.) Plaintiff also applied to be a K-9 Officer and/or a Detective at two other unspecified "times between 2011 and 2014." (Id.) In addition, Plaintiff applied for a Sergeant position in 2010 and was placed on the "horizontal roster" of candidates eligible for promotion. (Id. ¶ 14-16.) Groups of officers were promoted to the Sergeant position in September 2011 (id. ¶ 23), January 2013 (id. ¶ 24), January 2014 (id. ¶ 29-31), February 2014 (id. ¶¶ 32-33), April 2014 (id. ¶ 34), and August 2014 (id. ¶ 35). Plaintiff alleges that Defendant's promotion decisions were "motivated by race and place of national origin." (Id. ¶ 39.) Plaintiff alleges that Defendant's promotion practices, in general, were "tainted by cronyism" and "nepotism," and that these practices "negatively impact minority members of the [Port Authority Police Department ("the Department")]." (Id. ¶ 36.)

The Amended Complaint also includes allegations of discriminatory actions and events unrelated to promotions. These allegations are undated. Plaintiff alleges that "from the beginning of his career and up to date," he "has found obstacles to his ability to succeed at the Port Authority Police Department." (Id. ¶ 41.) Plaintiff "has been labeled with derogatory terms, found beans inside his work shoes," found "notes glued to the front of his locker referring to him as 'spic' and 'wet bag' [sic]," and learned of officers mocking his accent "over the Port Authority police radio." (Id.) Plaintiff "approached a high level supervisor with his concerns,"

but he was "confronted with more derogatory comments from that supervisor," who made statements to the effect that "'individuals like you should not be working for this police department. . . . We take care of our own kind. Mark my words; you will never advance at this police department and stop complaining against those who work with you because you will go down.'" (Id.) The Amended Complaint makes further reference to a formal complaint (the "Internal Complaint") submitted by Plaintiff to "the highest authority at the command," a subsequent "transfer to another work location" at Plaintiff's request, and "retaliatory actions, such as being assigned to undesirable work areas and posts, social ostracism, public ridicule and [an] unjust disciplinary charge filed against him to eliminate him from consideration from the promotional process." (Id. ¶¶ 43-45.)

### B. Procedural History

On October 10, 2014,[1] Plaintiff filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission (the "EEOC"), alleging discrimination on the basis of race, national origin, and retaliation. (Denalli Aff. in Supp. of Mot. to Dismiss ("Denalli Aff.") (Dkt. 11) Ex. B at 1.)[2] The Charge contained factual allegations substantially similar to the Amended Complaint. On July 31, 2015, the EEOC issued a Dismissal and Notice of Rights informing Plaintiff that the EEOC would not be pursuing Plaintiff's complaints, and that Plaintiff had 90 days in which to commence a private lawsuit, if so desired. (Compl. (Dkt. 1) at 13-14.)

Plaintiff initiated this action on October 28, 2015 (See generally id.), which was within the 90-day period specified in the Dismissal and Notice of Rights. Plaintiff filed the Amended

---

[1] Plaintiff asserts that the Charge was filed on October 3, 2014. (Am. Compl. ¶ 58.) The court relies instead on October 10, 2014, the date the Charge was received by the EEOC, for the reasons discussed below in Section II.C.1.b.

[2] Plaintiff did not submit to the court a copy of the Charge. Defendant, however, attached a copy in support of its Motion to Dismiss. (See Denalli Aff. Ex. B.) The court finds it necessary and appropriate to rely on this submission for the reasons discussed below in Section II.A.2.

Complaint on April 7, 2016, invoking the court's jurisdiction under the Fourth and Fourteenth Amendments to the United States Constitution, Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and 28 U.S.C. §§ 1900 et seq. (Am. Compl. ¶ 1.) On May 25, 2016, Defendant served Plaintiff with a motion to dismiss all claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).[3]

## II. DISCUSSION

### A. Defects in the Pleadings

The court notes with disapproval several omissions in Plaintiff's pleadings. Procedurally, the court is unable to resolve Defendant's Motion without filling in certain gaps. First, Plaintiff's legal claims are insufficiently precise. The court responds by inferring causes of action from the Amended Complaint, seeking appropriate legal vehicles for Plaintiff's factual allegations. Second, Plaintiff failed to attach or describe with specificity certain documents that underlie Plaintiff's (inferred) causes of action. Defendant helpfully attached those documents to its filings. In this section, the court outlines the legal basis for relying on Defendant's submissions in considering a motion to dismiss.

---

[3] Defendant also moves for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. Defendant's sole argument under Rule 12(b)(1), however, is that Plaintiff's Title VII claims are untimely based on the date that Plaintiff filed the Charge with the EEOC. (Def.'s Mem. in Supp. of Mot. to Dismiss (Dkt. 12) at 4-7.) Defendant contends that untimeliness "deprives a federal court of subject matter jurisdiction and requires the court to dismiss the suit." (Id. at 4.) This is an inaccurate statement of the law. "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that . . . is subject to waiver, estoppel, and equitable tolling." Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 385 (2d Cir. 2015) (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)). The court will thus construe Defendant's motion as seeking dismissal solely under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, asserting grounds of both untimeliness and insufficiency of the pleadings.

## 1. Identifying Implied Causes of Action

The Amended Complaint does not enumerate any causes of action. After proceeding through the factual allegations, the heading "AS FOR PLAINTIFF'S FEDERAL CLAIM" introduces the following statements: first, that Plaintiff is "constitutionally entitled to due process and equal protection"; second, that Defendant's actions "were premised all or in part" upon Plaintiff's "race, ethnicity and religion" (introducing the element of religion for the first time, but failing to mention the element of national origin, a central feature in the factual allegations); and third, that Defendant "violated [Plaintiff's] rights under the US Constitution and the Civil Rights Act of the United States. Plaintiff has been therefore damaged." (Id. ¶¶ 61-62.) Plaintiff offers no further specification as to the specific rights that were allegedly violated, the specific causes of action he seeks to assert, or the legal standard by which his claims should be assessed. Even so, this language procedurally approximates the required "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

The Supreme Court has cautioned against allowing potentially meritorious complaints to founder on the shoals of shoddy legal drafting. The "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Johnson v. City of Shelby, Miss., —— U.S. ——, 135 S. Ct. 346, 346 (2014); see also 5 Charles Alan Wright et al., Federal Practice and Procedure § 1219 (2016 ed.) ("The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief." (footnotes omitted)). For example, "[a] failure to specify 42 U.S.C. § 1983 as the vehicle for pleading a constitutional claim is not a defect warranting dismissal" as long as "plaintiffs have 'informed [the defendant] of the factual basis for their complaint.'" Smith v. Campbell, 782 F.3d 93, 99 (2d Cir. 2015) (quoting Johnson, 135 S. Ct. at 347)).

5

In an effort to bring legal substance and specificity to the Amended Complaint, the court looks to Plaintiff's assertion of federal question jurisdiction, which cites the Fourth and Fourteenth Amendments to the United States Constitution, Titles VI and VII of the Civil Rights Act of 1964 (cited twice, ostensibly for emphasis), 42 U.S.C. § 1983 (cited by name and also as "the Civil Rights Act of 1871," ostensibly for historical accuracy), 42 U.S.C. § 1985, and 42 U.S.C. § 1986.[4] (See Am. Compl. ¶ 1.) For each of these provisions, the court will consider whether Plaintiff's factual allegations plausibly suggest an available cause of action.

### 2. Consideration of Defendant's Submissions

On the facts, as well, the court seeks to shore up the Amended Complaint. Plaintiff makes several allegations without specifying names, places, or dates; these allegations thus float unmoored in space and time. (See Am. Compl. ¶¶ 38-45.) Plaintiff also failed to submit copies of key documents referenced in the Amended Complaint. Notably, though Plaintiff submitted a copy of the EEOC's Dismissal and Notice of Rights (see Compl. at 13-14), Plaintiff failed to include a copy of the Charge, the document that underlies all of Plaintiff's (inferred) Title VII claims in this action. Plaintiff also failed to attach the Internal Complaint, or even to specify the year in which it was written. (See Am. Compl. ¶ 43.) This complaint, however, speaks to a material element of Plaintiff's retaliation claim, as discussed below in Section II.C.3.

Defendant submitted copies of both missing documents in support of its Motion to Dismiss. (See Denalli Aff. Ex. B (the Charge), Ex. G at 15 (the Internal Complaint).) As a general rule, courts "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,

---

[4] The jurisdictional statement is one instance where the Amended Complaint included more detail than was perhaps necessary. In addition to the duplicate citations discussed in the text, Plaintiff cites 28 U.S.C. §§ 1900 et seq., a set of provisions that establish "fees and costs" in the federal judiciary. The court is unable to discern an ostensible purpose for this citation with regard to either jurisdiction or potential causes of action.

723 F.3d 192, 202 (2d Cir. 2013). "Rather, where matter outside the pleadings is offered and not excluded by the trial court, the motion to dismiss should be converted to a motion for summary judgment." Id. at 202-03 (citing Fed. R. Civ. P. 12(d)). "[I]n some cases," however, "a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

The court finds that the Charge and the Internal Complaint are integral to the pleadings because Plaintiff explicitly references both in the Amended Complaint, and because Plaintiff's causes of action under Title VII "rel[y] heavily upon [the] terms and effect" in one or both documents. Goel, 820 F.3d at 559; see also Global Network Commc'ns. Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (noting the permissibility of considering "legal document[s] containing obligations upon which the plaintiff's complaint stands or falls").

### B. Legal Standard for a Motion to Dismiss

"On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." Littlejohn v. City of New York, 795 F.3d 297, 306 (2d Cir. 2015) (citation omitted). The Supreme Court cautions, however, that this leniency is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To defeat a Rule 12(b)(6) challenge, "a complaint must plead specific facts sufficient to support a plausible inference that the defendant is liable for the misconduct alleged. While 'the plausibility standard is not akin to a probability requirement, it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Doe v. Columbia Univ., No. 15-1536, 2016

WL 4056034, at *6 (2d Cir. July 29, 2016) (internal citations and alterations omitted) (quoting Iqbal, 556 U.S. at 678).

Additional considerations apply in the context of employment discrimination claims. "Ultimately, the plaintiff will be required to prove that the employer-defendant acted with discriminatory motivation. However, in the first phase of the case, the prima facie requirements are relaxed." Littlejohn, 795 F.3d at 306 (analyzing a line of Supreme Court precedent from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to Iqbal, 556 U.S. 662). "[A]t the pleadings stage . . . , a plaintiff has a 'minimal burden' of alleging facts 'suggesting an inference of discriminatory motivation.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015) (quoting Littlejohn, 795 F.3d at 310). In sum, the allegations in the complaint "need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." Littlejohn, 795 F.3d at 311. This burden-shifting framework applies to Plaintiff's claims of employment discrimination under both Title VII and Section 1983. Id. at 312 (citing Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010)).

### C. Employment Discrimination Claims Under Title VII and Section 1983

Title VII prohibits employment discrimination based on race, color, religion, sex or national origin. See 42 U.S.C. § 2000e-2. The Amended Complaint could be read as implicitly asserting Title VII claims under theories of (1) disparate treatment, (2) retaliation, and (3) hostile work environment. Plaintiff is able to assert substantially equivalent claims under 42 U.S.C. § 1983, which protects against the violation of federal rights by persons acting under color of state law. The court therefore considers the two statutes together.

Defendant moves to dismiss Plaintiff's Title VII claims on grounds of untimeliness and failure to state a claim. (Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") (Dkt. 12)

8

at 4-7.)  Defendant moves to dismiss Plaintiff's Section 1983 claims for failure to identify a

relevant federal right and, in the alternative, on grounds of untimeliness.  (Id. at 8; see also Def.'s

Reply (Dkt. 14) at 2-3.)

The court begins by defining the similarities and differences between employment

discrimination actions under Section 1983 and Title VII.  The court then considers each of

Plaintiff's three causes of action to see whether the Amended Complaint states any timely

allegations, and if so, whether those allegations are sufficient to state a claim.  Finding no viable

allegations, the court dismisses Plaintiff's claims under both Title VII and Section 1983.

1.  Section 1983's Applicability to Employment Discrimination

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress

for the deprivation of rights established elsewhere.  To prevail on a Section 1983 claim, a

plaintiff must establish that a person acting under color of state law deprived him of a federal

right."  Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999) (citations omitted).  Defendant does

not dispute that, as a bi-state entity, it operates "under color of state law."  Rather, Defendant

urges dismissal of Plaintiff's Section 1983 claims on the grounds that the Amended Complaint

"contains no statement regarding the applicability of 42 U.S.C. § 1983."  (Def.'s Reply at 3.)  As

explained above in Section II.A.1, however, "[a] failure to specify 42 U.S.C. § 1983 as the

vehicle for pleading a constitutional claim is not a defect warranting dismissal, at least in the

absence of some prejudice to the defendant."  Smith, 782 F.3d at 99 (citing Johnson, 135 S. Ct.

at 347)).  When "plaintiffs have 'informed [the defendant] of the factual basis for their

complaint, they [are] required to do no more to stave off threshold dismissal for want of an

adequate statement of their claim.'"  Id. (alterations in original) (citing Johnson, 135 S. Ct.

at 347)).

Plaintiff's statement of the grounds for federal jurisdiction lists two constitutional provisions that are potentially actionable through Section 1983: the Fourth and Fourteenth Amendments. The Fourth Amendment is unequivocally irrelevant to this action because Plaintiff has cited no facts that pertain in any way to "unreasonable searches and seizures." U.S. Const. amend. IV. Plaintiff's Section 1983 action is therefore dismissed as to the Fourth Amendment for failure to state a claim upon which relief can be granted.

Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff may use Section 1983 to bring claims that largely "parallel[] his Title VII claim[s]" as long as the adverse actions at issue were taken "under color of state law." Vega, 801 F.3d at 88 (internal quotation marks and citations omitted) (discussing claims for disparate treatment); see also id. at 91 ("[T]he elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII."); Littlejohn, 795 F.3d at 320 (finding that hostile work environment claims under Section 1983 use the same legal standard as under Title VII).[5]

The following sections explain two differences between employment discrimination actions under Section 1983 and Title VII that are relevant to this action: an additional element for Section 1983 claims, and the calculation of timeliness under each statute.[6]

### a. The "Custom or Policy" Requirement for Section 1983

The first difference is that Section 1983 claims have an additional element when plaintiffs bring action against certain types of public entities. A "section 1983 claim against the Port Authority" must be dismissed if "there [is] no showing that the injury was caused by

---

[5] Because these Section 1983 claims parallel Plaintiff's claims under Title VII, Defendant is unable to claim prejudice or lack of notice under Smith v. Campbell, 782 F.3d 93, 99 (2d Cir. 2015).

[6] One additional point of difference is that "a § 1983 claim, unlike a Title VII claim, can be brought against an individual." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 88 (2d Cir. 2015). This distinction is immaterial to the present action because Plaintiff has not named any individuals as defendants.

execution of a <u>custom or policy</u> of the Port Authority." <u>Raysor v. Port Auth. of N.Y. & N.J.</u>, 768

F.2d 34, 38 (2d Cir. 1985) (emphasis added) (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436

U.S. 658, 691-95 (1978)). This required showing applies over and above the requirements of a

standard Title VII claim.

*b.  Calculating "Timeliness" Under Section 1983 and Title VII*

The second difference between claims under Section 1983 and Title VII is the calculation

of the timeliness for a private action. "Section 1983 actions in New York are subject to a three-

year statute of limitations, running from the time a plaintiff knows or has reason to know of the

injury giving rise to the claim." <u>Milan v. Wertheimer</u>, 808 F.3d 961, 963 (2d Cir. 2015) (internal

citations and quotation marks omitted). Because Plaintiff initiated this action on

October 28, 2015, the statute of limitations bars Section 1983 claims for any actions occurring

prior to October 28, 2012.

Under Title VII, a private action only becomes available after an individual exhausts

administrative remedies with the EEOC. <u>See</u> 42 U.S.C. § 2000e-5(b). The statute also imposes

a time limitation: "A claim must generally be filed within 180 days after the alleged

discriminatory practice," but that window is extended to 300 days if "the practice occurs in a

State that has laws" and administrative enforcement mechanisms that target "the [same] sort of

discrimination plaintiff alleges." <u>Dezaio v. Port Auth. of N.Y. & N.J.</u>, 205 F.3d 62, 64

(2d Cir. 2000); <u>see also</u> 42 U.S.C. § 2000e-5(e)(1). If the EEOC declines to pursue the claim, the

individual has the right to bring a private action based on the same allegations, but only if the

action is initiated within 90 days of receiving the EEOC's Dismissal and Notice of Rights. <u>Id.</u>

§ 2000e-5(f)(1).

In this action, Plaintiff satisfied the exhaustion requirement by filing the Charge with the

EEOC, and timely filed this action within 90 days of receiving the EEOC's Dismissal and Notice

of Rights. See supra Section I.B. Defendant asserts, however, that the alleged discriminatory conduct all occurred outside the permissible time window for the Charge, and that Plaintiff's claim should thus be dismissed as time-barred. (Def.'s Mem. at 4-7.)

The court must determine the appropriate time period within which to examine Plaintiff's allegations of discrimination. The parties disagree on two issues. First, the parties dispute which of the two time windows should apply. (Compare Pl.'s Resp. in Opp'n to Mot. to Dismiss ("Pl.'s Resp.") (Dkt. 13) at 3 (relying on the 300-day window) with Denalli Aff. at 4-5 (arguing in favor of the 180-day window).) The Second Circuit has clearly stated, however, that "the 180-day limitation period applies in the case of an employee of the Port Authority." Dezaio, 205 F.3d at 65. The second point of disagreement concerns the Charge filing date, the starting point for calculating the window. Defendant uses October 10, 2014, the date the EEOC received the Charge. (See, e.g., Denalli Aff. at 2.) Plaintiff cites primarily to October 3, 2014, the date the Charge was sent, though Plaintiff also cites the October 10 date in one instance. (See Am. Compl ¶ 58; Pl.'s Resp. at 2. But see id. at 3 ("[T]he EEOC filing took place on October 10, 2014").) Defendant is correct that "charges are timely filed if received by the [EEOC] within 180 days from the date of the alleged violation." 29 C.F.R. § 1601.13(a)(1) (emphasis added).

The court finds that October 10, 2014, is the appropriate date from which to calculate the 180-day window for Plaintiff's Charge. The Title VII time window thus begins on April 13, 2014.

### c. The Court's Approach for Assessing Plaintiff's Claims Under Title VII and Section 1983

The Amended Complaint could be read to assert Title VII and Section 1983 claims under theories of (1) disparate treatment, (2) retaliation, and (3) hostile work environment. In

considering each theory, the court will determine whether Plaintiff has pleaded any relevant facts

that fall within the three-year statute of limitations for Section 1983 or the 180-day time window

for Title VII. If so, the court will consider whether Plaintiff's allegations are sufficient to state a

claim under Title VII. If so, the court will then consider whether, under Section 1983, Plaintiff

has successfully shown that Defendant's discriminatory actions were taken pursuant to a "custom

or policy" under Monell.

### 2. Plaintiff's Claim of Disparate Treatment

Looking solely at the allegations that fall within the permitted time periods for

Section 1983 and Title VII, the court finds that the Amended Complaint fails to state a claim of

disparate treatment. Plaintiff's disparate treatment claims must therefore be dismissed.

#### a. *Legal Standard*

"[T]o defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must

plausibly allege that (1) the employer took adverse action against him, and (2) his race, color,

religion, sex, or national origin was a motivating factor in the employment decision." Vega, 801

F.3d at 87. A failure to promote can constitute an adverse employment action. See, e.g., Mauro

v. S. New England Telecomms., Inc., 208 F.3d 384, 386 (2d Cir. 2000). Therefore, the court

must determine whether Plaintiff has met his burden of "showing circumstances giving rise to an

inference of discrimination." Vega, 801 F.3d at 87.

Even the "relaxed" pleading requirements for employment discrimination cases require a

minimal factual basis suggestive of discrimination. At the very least, Plaintiff must allege that

he was qualified for the position he sought, that he did not receive the position, and that the

position either remained open or was filled by an individual who does not belong to the protected

class. See Mauro, 208 F.3d at 386 (A plaintiff alleging discriminatory failure to promote can

survive a motion to dismiss by showing that "(1) he is a member of a protected class; (2) he

13

applied for promotion to a position for which he was qualified; (3) he was rejected for the position; and (4) the employer kept the position open and continued to seek applicants."); Littlejohn, 795 F.3d at 313 n. 11 (If a plaintiff alleges discriminatory termination, "the mere fact that [the] plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination." (quoting Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 380 (2d Cir. 2001)).

### b. Application

The Amended Complaint describes multiple instances in which Plaintiff was not chosen for promotion. These instances span a period of time from January 2008 to August 2014. The court begins by identifying which of these allegations are timely. For the purposes of an EEOC Charge, an "unlawful employment practice" in a seniority system "occurs," at the latest, "when a person aggrieved is injured by the application of the seniority system or provision of the system." 42 U.S.C. § 2000e-5(e)(2). In this case, the date of injury is the date when a desired promotion was issued to someone other than Plaintiff. Applying that framework, the three-year statute of limitations for Plaintiff's Section 1983 claim includes five instances of denied promotions (from January 2013 to August 2014), and the time window for Plaintiff's Title VII claim includes one denied promotion (August 15, 2014).

Having found that Plaintiff has at least one timely allegation of disparate treatment under each statute, the court turns to the sufficiency of the pleadings. The court finds that none of Plaintiff's timely allegations are sufficiently specific to establish a presumption of discriminatory intent under Littlejohn. The Amended Complaint merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" which are insufficient to save a claim from dismissal. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

The August 2014 promotion is illustrative. Plaintiff states that he "was not listed for promotion" on August 15, 2014, but he makes no specific allegations regarding the race, national origin, or qualifications of the officers who <u>did</u> receive promotions. (<u>See</u> Am. Compl. ¶¶ 35-37.) Plaintiff states only that the "list of officers promoted . . . reflected the continuing discriminatory practices of the agency that are tainted by cronyism [and] nepotism[,] and that negatively impact minority members of the [Department]." (<u>Id.</u> ¶ 36.) Plaintiff's allegations are similarly conclusory with regard to all the other denied promotions stretching back to January 2013.[7]

These allegations closely resemble the factual claims rejected by the <u>Iqbal</u> Court. In that case, the plaintiff alleged that the government defendants subjected him to "harsh conditions of confinement as a matter of policy, <u>solely on account</u> of his religion, race, and/or national origin and for no legitimate penological interest." <u>Iqbal</u>, 556 U.S. at 680 (emphasis added) (internal alterations, quotation marks, and citations omitted). Similarly, Plaintiff's allegations in this action are "no more than conclusions," and are thus "not entitled to the assumption of truth" that attaches to well-pleaded factual allegations. <u>Id.</u> at 679.

By way of contrast, Plaintiff's allegations of discriminatory K-9 Officer promotions in 2008 contained additional material details. Plaintiff alleged that he "was the only non natural citizen participating for the canine detail," but that "a non minority officer, junior and less

---

[7] <u>See</u> Am. Compl. ¶¶ 24 (January 2013: "[U]pon information and belief," the thirteen promotions "had a disproportionate effect on minorities."), 30 (January 2014: "Upon information and belief," the 27 promotions "again reflected the nepotism, cronyism and discriminatory practices of the agency that negatively impacted on minority employees."), 32-33 (February 2014: The promotions were "tainted by [Defendant's] continued discriminatory practices," which "impacted negatively on minority employees."), 34 (April 2014: "[U]pon information and belief," the eight promotions "reflected [Defendant's] discriminatory practices.").

Plaintiff also alleges two instances "between 2011 and 2014" when he was denied promotions for K-9 Officer and/or Detective. (<u>Id.</u> ¶ 38.) The absence of specific dates leaves the court unable to determine whether those instances before or after the October 2012 cut-off date for Section 1983 or the August 2014 cut-off date for Title VII. Regardless, consideration of these two promotions would not alter the court's conclusion. As with the allegations cited above, Plaintiff offers only the conclusory statement that Defendant's promotion decisions "were motivated by race and place of national origin." (Am. Compl. ¶ 39.)

qualified than the plaintiff, obtained the canine position." (Am. Compl. ¶ 38.) If these allegations were not time-barred, they may have been sufficient to create a presumption of discrimination under Littlejohn. As it stands, however, a single well-pleaded allegation of discrimination in 2008 does not establish a presumption of discrimination with regard to promotion decisions that occurred four or more years later.

Plaintiff's disparate treatment claim cannot survive a motion to dismiss even with the court taking as true the allegations that Defendant "failed to apply objective criteria in evaluating" candidates and "failed to conduct the promotional process" in accordance with its own policies. (See Am. Compl. ¶¶ 17-18.) Such conduct by an employer may well be frustrating for employees who strive for promotion based on merit. Standing alone, however, those allegations fail to show "circumstances giving rise to an inference of discrimination" on the basis of race or national origin. Vega, 801 F.3d at 87 (emphasis added).

Because the court finds that Plaintiff has failed to state a claim under Title VII, the court need not reach the additional required showing under Section 1983 that Defendant acted pursuant to a "custom or policy" under Monell. Plaintiff's claims for disparate treatment under Title VII and Section 1983 must be dismissed.

### 3. Plaintiff's Claim of Retaliation

The court finds that Plaintiff has failed to allege any relevant facts within the relevant time periods under Section 1983 or Title VII. Therefore, his retaliation claim must be dismissed as untimely.

#### a. *Legal Standard*

"To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal

connection between the protected activity and the adverse employment action.'" Littlejohn, 795
F.3d at 315-16 (quoting Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)).

      *b. Application*

      Plaintiff alleges that he was harassed by his peers and a superior officer on the basis of
his race and national origin. (Am. Compl. ¶ 41.) Plaintiff "thereafter submitted a time stamped
Port Authority form to the highest authority at the command stating his discrimination issues."
(Id. ¶ 43.) Plaintiff "verbally and in written form complain[ed] to supervisory levels of the Port
Authority that he had suffered derogatory remarks, racial slurs and discriminatory treatment," but
alleges that "his complaints were ignored or [he] was subjected to retaliatory actions, such as
being assigned to undesirable work areas and posts, social ostracism, public ridicule and [an]
unjust disciplinary charge filed against him to eliminate him from consideration from the
promotional process." (Id. ¶ 44.)

      Plaintiff does not specify when these events took place. The Internal Complaint
submitted by Defendant,[8] however, contains harassment allegations that are virtually identical to
those in the Amended Complaint. (Compare Denalli Aff. Ex. G at 15 with Am. Compl. ¶ 41.)
The Internal Complaint thus appears to be the "time stamped Port Authority form" referenced in
the Amended Complaint. (See Am. Compl. ¶ 43.) The Internal Complaint is dated
July 18, 2002. (Denalli Aff. Ex. G at 15.) Defendant argues that "by [Plaintiff's] own
recounting," the harassment described in paragraph 41 of the Amended Complaint "occurred
between February 5, 2001, when [Plaintiff] became a Port Authority employee[,] and
July 18, 2002," when he submitted the Internal Complaint. (Denalli Aff. at 7 (footnotes
omitted).)

---

[8] The court relies on this submission for the reasons articulated above in Section II.A.2.

The court is unable to accept Defendant's argument at face value, however, because Plaintiff introduces his allegations of harassment with the following statement: "[P]laintiff, from the beginning of his career and up to date, has found obstacles to his ability to succeed at the Port Authority Police Department." (Am. Compl. ¶ 41 (emphasis added).)  The Second Circuit considered similar language in Vega v. Hempstead Union Free School District and found that, though the complaint was "not precise in terms of dates," the plaintiff's allegations nonetheless "seem[ed] to suggest an ongoing practice" of employment discrimination.  801 F.3d at 80.  The Vega court noted allegations about when certain actions "began" (with no end date specified), and how, as of the filing of the complaint, the defendants were "still committing these acts" and "continue to do so whenever they get a chance."  Id.  Vega is clearly distinguishable from the present action, however, for three reasons.

First, the allegations in the Vega complaint did not also appear, nearly verbatim, in a separate document created several years earlier.  The Amended Complaint, meanwhile, rearticulates the exact allegations of harassment listed in the Internal Complaint, and says that Plaintiff "thereafter submitted" the Internal Complaint to Defendant.  (Id. ¶ 43 (emphasis added).)  This phrasing suggests that the Amended Complaint is proceeding in chronological order, with paragraph 41 laying out the harassment that Plaintiff suffered in 2001 and 2002, and paragraph 43 explaining that he responded to the harassment by filing the Internal Complaint.

Second, the complaint in Vega described the specific discriminatory practices that were alleged to be ongoing, namely that the plaintiff's workload had increased because he was assigned a disproportionate number of Spanish-speaking students.  See 801 F.3d at 80.  The Vega complaint may not have been "precise in terms of dates," but it was precise in terms of the specific misconduct that allegedly continued until the complaint was filed.  In the present action,

18

Plaintiff states only that "from the beginning of his career and up to date, [he] has found obstacles to his ability to succeed at the Port Authority Police Department." (Am. Compl. ¶ 41 (emphasis added).) This ambiguous pronouncement introduces a recitation of harassment that is otherwise identical to the Internal Complaint. Given that context, it appears that Plaintiff referenced the harassment "from the beginning of his career" merely as background for the allegedly discriminatory promotion decisions, which continue "up to date."

Finally, the alleged discrimination in Vega began a mere three years before the plaintiff filed a charge with the EEOC. See 801 F.3d at 77. Vega complained to his employer on at least two occasions in the intervening years, thereby evincing his ongoing displeasure with the way he was being treated. See id. In the present action, by contrast, twelve years passed between Plaintiff's Internal Complaint and the filing of the Charge. In addition, Plaintiff requested and "received a transfer to another work location" after he submitted the Internal Complaint (Am. Compl. ¶ 43), meaning that he spent those years in a new environment with new coworkers. Whereas Vega's repeated statements of displeasure suggest ongoing discriminatory practices, Plaintiff does not allege specific facts that would suggest continued harassment.

For these reasons, the court finds that the harassment described in paragraph 41 of the Amended Complaint occurred during the period from 2001 to 2002. The court now turns to the allegations of retaliatory actions that followed the Internal Complaint. (See Am. Compl. ¶ 44.) These, too, are undated. To fall within the three-year statute of limitations for Section 1983, at least one retaliatory action would need to have occurred after October 28, 2012. The court is conscious of its obligation to draw all reasonable inferences in Plaintiff's favor. See Littlejohn, 795 F.3d at 306. The court finds it unreasonable to assume, without any factual basis, that the

alleged retaliation occurred in the fall of 2012, a full decade after Plaintiff filed the Internal Complaint.

The court has already determined that the denied promotion of August 2014 is not entitled to a presumption of discriminatory motivation. Plaintiff has failed to allege any other retaliatory acts within the Section 1983 statute of limitations or the Title VII time window. Plaintiff's claim of retaliation is therefore time-barred under both statutes, and must be dismissed.

### 4. Plaintiff's Claim of Hostile Work Environment

The court finds that Plaintiff has failed to allege any relevant facts within the relevant time periods under Section 1983 or Title VII. Therefore, his claim of hostile work environment must be dismissed as untimely.

#### a. Legal Standard

"To establish a hostile work environment under Title VII, . . . a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Littlejohn, 795 F.3d at 320-21 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Littlejohn, 795 F.3d at 321 (quoting Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014)).

For this type of claim, the boundaries of the time window may be relaxed somewhat under the "continuing violation" doctrine: "[W]ith respect to hostile work environment claims, consideration is given to 'behavior alleged outside the statutory time period, so long as [at least one] act contributing to that hostile environment takes place within the statutory time period.'" Orlando v. Dep't of Transp., Comm'r, 459 F. App'x 8, 9-10 (2d Cir. 2012) (alterations omitted)

(quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002)); see also Washington v. Cty. of Rockland, 373 F.3d 310, 318 (2d Cir. 2004) ("Conduct that has been characterized as a continuing violation is 'composed of a series of separate acts that collectively constitute one unlawful employment practice.'" (quoting Morgan, 536 U.S. at 111)).[9]

### b. Application

Even after taking into account the continuing violation doctrine, Plaintiff's claim of hostile work environment must be dismissed as untimely. The relevant allegations for this claim are the same as for Plaintiff's claim of retaliation. (See Am. Compl. ¶¶ 41-44 (describing the harassment that preceded the Internal Complaint and the retaliatory harassment that followed).) As described above, any harassment that preceded the Internal Complaint was found to have occurred on or before July 18, 2002. Any ensuing retaliatory harassment cannot reasonably be assumed to have occurred as recently as October 2012.

\* \* \*

Plaintiff's factual allegations are insufficient to support causes of action for disparate treatment, retaliation, or hostile work environment. Therefore, the court grants Defendant's Motion to Dismiss as to Plaintiff's claims under Title VII and Section 1983.

### D. Title VI of the Civil Rights Act

Title VI prohibits employment discrimination against protected classes in programs and activities that receive federal financial assistance. See 42 U.S.C. § 2000d. "[F]or a claimant to recover under Title VI . . . , a threshold requirement is that the employer be the recipient of

---

[9] The Amended Complaint could be read as implicitly asserting a "continuing violation" claim of disparate treatment. (See Am. Compl. ¶ 11 (alleging that Plaintiff has been denied promotions "continuously throughout his career").) The Second Circuit is clear, however, that "[w]ith respect to claims based on . . . failure to promote," Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period, even if other acts of discrimination occurred within the statutory time period." McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 75 (2d Cir. 2010) (emphasis, internal citations, and quotation marks omitted).

21

federal funds <u>aimed primarily at providing employment</u>." <u>Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport</u>, 647 F.2d 256, 276 (2d Cir. 1981) (emphasis added) (citations omitted). A district court may not consider a Title VI claim without first making a finding, based on the record, as to the primary purpose of the relevant federal funds. <u>Id.</u> at 276-77.

Plaintiff has made no allegations as to the <u>existence</u> of any federal funding, much less the primary purpose thereof. Without any relevant record on this mandatory threshold inquiry, the court is precluded from considering Plaintiff's Title VI claim. The claim must thus be dismissed.

### E. Sections 1985 and 1986

Section 1985 establishes three causes of action that target conspiracies to interfere with civil rights. <u>See</u> 42 U.S.C. § 1985. Section 1986, in turn, provides a cause of action against a person who neglects to prevent a harm under Section 1985. <u>See id.</u> § 1986. The court considers these statutes together because "a § 1986 claim must be predicated upon a valid § 1985 claim." <u>Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1088 (2d Cir. 1993) (citation omitted).

All three actions under Section 1985 require a showing of conspiracy among "two or more persons." 42 U.S.C. § 1985. To satisfy the conspiracy element, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." <u>Robinson v. Allstate Ins. Co.</u>, 508 F. App'x 7, 9 (2d Cir. 2013) (quoting <u>Webb v. Goord</u>, 340 F.3d 105, 110 (2d Cir. 2003)). Defendant correctly points out that the Amended Complaint "is wholly silent with regard to any agreement, express or understood, between the Port Authority and any person or entity, and void of any facts regarding the effectuation of a conspiracy by the Port Authority." (Def.'s Mem. at 9.)

Plaintiff fails to state a claim under Section 1985 or Section 1986.  Defendant's Motion to Dismiss is granted as to these statutes.

## III.    CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED.  The Amended Complaint is hereby DISMISSED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York       NICHOLAS G. GARAUFIS
       October 7, 2016        United States District Judge